COURT'S
EXHIBIT NO. ___1___
IDENTIFICATION/EVIDENCE
DKT.# 21cv564-1
DATE: 10/22/2024
PENGAD 800-631-6989

HDM:JV/JKW/JPL
F. #2020R00002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

BRIAN MICHAEL SUTTON,
    also known as "Mike Summers,"
    "Mike Miller" and "Ryan White,"
BRYCEN KAY MILLETT,
    also known as "Brett Johnson" and
    "Tommy Wilkinson,"
ANTHONY SANTAMARIA,
    also known as "Big Boy," "Wade Watts,"
    "Pablo Rodriguez," "Ryan Rusty" and
    "Bruce Peter,"
JOSHUA MANUEL ALEGRIA,
    also known as "Jboy," "Jaxon Asher"
    and "Turk Malloy,"
HERSHEL TSIKMAN,
    also known as "Andrew Milner,"
    "Andrew M.," "Linus Caldwell,"
    "Adam Schneider," "Jonathan Martin,"
    "H" and "Schmeckel," and
HAFIZULLAH EBADY,
    also known as "Hafiz Ebady,"

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**SUPERSEDING
INDICTMENT**

Cr. No. 21-564 (S-3) (WFK)
(T. 18, U.S.C., §§ 982(a)(1), 982(a)(7),
982(b)(1), 1347, 1349, 1956(h), 2 and
3551 et seq.; T. 21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

I.    The Defendants and Relevant Co-Conspirators and Entities

1.    The defendant BRIAN MICHAEL SUTTON, also known as "Mike Summers," "Mike Miller" and "Ryan White," was a United States citizen and resident of Moscow, Russia.

2.    The defendant BRYCEN KAY MILLETT, also known as "Brett Johnson" and "Tommy Wilkinson," was a United States citizen and resident of Saint George, Utah.

3.    The defendant ANTHONY SANTAMARIA, also known as "Big Boy," "Wade Watts," "Pablo Rodriguez," "Ryan Rusty" and "Bruce Peter," was a United States citizen and resident of North Hollywood, California.

4.    The defendant JOSHUA MANUEL ALEGRIA, also known as "Jboy," "Jaxon Asher" and "Turk Malloy," was a United States citizen and resident of Woodland Hills, California.

5.    The defendant HERSHEL TSIKMAN, also known as "Andrew Milner," "Andrew M.," "Linus Caldwell," "Adam Schneider," "Jonathan Martin," "H" and "Schmeckel," was a United States citizen and resident of Los Angeles, California.

6.    The defendant HAFIZULLAH EBADY, also known as "Hafiz Ebady," was a United States citizen and resident of Parsippany, New Jersey.

7.    David Gary Bishoff, also known as "Bobby Fischer," was a United States citizen and resident of Saint George, Utah.

8.    Dela Saidazim, also known as "Delila," "Gina Payne," "Eloise Pay" and "Olivia Rothstein," was a United States citizen and resident of New York State and Moscow, Russia.

II.    The Health Care Fraud and Money Laundering Scheme

A.    Overview of the Scheme

9.    In or about and between April 2017 and March 2022, the defendants BRIAN SUTTON, BRYCEN KAY MILLETT, ANTHONY SANTAMARIA, JOSHUA MANUEL ALEGRIA, HERSHEL TSIKMAN and HAFIZULLAH EBADY, together with others, engaged in a health care fraud and money laundering scheme, which involved billing health insurance providers (the "Private Insurers") for fraudulent telemedicine prescriptions and laundering the proceeds of the scheme.

10.    In furtherance of the scheme, the conspirators: (a) utilized call centers in the United States, Russia and elsewhere to contact individuals enrolled with Private Insurers (the "Beneficiaries") to offer medications at little to no cost to the Beneficiaries and without any medical exam to determine the medical necessity for those medications; (b) purchased or caused the purchase of brick-and-mortar pharmacies with pre-existing pharmacy board registrations and insurance relationships with the Private Insurers (the "Scheme Pharmacies"); (c) recruited licensed physicians and generated fraudulent prescriptions for the Beneficiaries under the physicians' National Provider Identifier ("NPI")[1] codes; and (d) submitted reimbursement requests to Private Insurers for the fraudulent prescriptions purportedly filled by the Scheme Pharmacies.

---

[1] A National Provider Identifier or NPI is a unique identification number for health care providers subject to the Health Insurance Portability and Accountability Act (HIPAA) Administrative Simplification Standard.   Such health care providers must use NPIs in the administrative and financial transactions adopted under HIPAA, including for healthcare billing purposes.

4

11.    Among other things, under the direction of the defendant BRIAN SUTTON:

(a)    the defendant BRYCEN KAY MILLETT was responsible for overseeing call centers in Utah, Russia and elsewhere overseas;

(b)    the defendant ANTHONY SANTAMARIA trained and managed individuals to input data and electronically submit fraudulent requests for reimbursement to Private Insurers;

(c)    the defendant JOSHUA MANUEL ALEGRIA oversaw the development of a custom management and workflow program, and generated and forwarded fraudulent prescriptions to licensed physicians for approval;

(d)    the defendant HERSHEL TSIKMAN coordinated the laundering of criminally derived proceeds and directed the transfer of funds to and through various straw owners and shell entities;

(e)    the defendant HAFIZULLAH EBADY coordinated the purchase and directed the day-to-day operation of multiple Scheme Pharmacies owned and controlled by one or more of the defendants;

(f)    David Gary Bishoff coordinated logistics for the operations of multiple Scheme Pharmacies; and

(g)    Dela Saidazim recruited licensed physicians to purportedly review prescriptions by telemedicine providers and acted as SUTTON's personal assistant, coordinating the activities of the co-conspirators at the direction of SUTTON and others.

5

## B.    The Call Centers and Scheme Pharmacies

12.    The defendants BRIAN SUTTON and BRYCEN KAY MILLETT, together with others, including David Gary Bishoff, operated and directed the operation of call centers to identify beneficiaries for whom they could submit fraudulent prescription reimbursement requests.   Specifically, and in part, the call centers contacted Beneficiaries to offer medications at little to no cost to the Beneficiaries and without any medical exam.   At SUTTON's direction, the defendants ANTHONY SANTAMARIA and JOSHUA MANUEL ALEGRIA, together with others, generated fraudulent prescriptions for medications for the Beneficiaries.

13.    Shell Company #1, an entity the identity of which is known to the Grand Jury and which maintained bank accounts located in the United States, paid for the operations of the U.S. call centers with funds transferred, directly and indirectly, from outside of the United States.   Among other things, Shell Company #1 purchased lists of Beneficiaries and their contact information and paid for telephone and software licenses for the call centers located in the United States.   In addition, Shell Company #1 and Shell Company #2, an entity the identity of which is known to the Grand Jury, received funds sent, directly and indirectly, from outside of the United States to pay proceeds of the scheme to the defendant BRYCEN KAY MILLETT and David Gary Bishoff.

14.    To promote the scheme and to conceal the proceeds derived from it, the defendants BRIAN SUTTON, JOSHUA MANUEL ALEGRIA, HERSHEL TSIKMAN and HAFIZULLAH EBADY, David Gary Bishoff and their co-conspirators directed, purchased and caused the purchase of one or more of the Scheme Pharmacies through straw owners and pass-through shell companies in the names of straw owners.

6

15. The defendant JOSHUA MANUEL ALEGRIA, together with others, recruited individuals to serve as straw owners of the Scheme Pharmacies. ALEGRIA himself also served as a straw owner of a Scheme Pharmacy located in Texas.

16. Upon purchasing one of the Scheme Pharmacies that had pre-existing pharmacy board registrations and insurance relationships with the Private Insurers, under the direction of the defendants BRIAN SUTTON, ANTHONY SANTAMARIA, JOSHUA MANUEL ALEGRIA and HAFIZULLAH EBADY, together with others, including David Gary Bishoff, the conspirators gained control over the Scheme Pharmacies' NPI numbers, insurance and pharmacy benefit manager contracts, state pharmacy registrations and bank accounts, and caused the Scheme Pharmacies to install pharmacy management software that allowed for the remote submission of pharmacy prescription reimbursement requests to Private Insurers ("Remote Billing Software").

17. In total, the defendants BRIAN SUTTON, BRYCEN KAY MILLETT, ANTHONY SANTAMARIA, JOSHUA MANUEL ALEGRIA, HERSHEL TSIKMAN and HAFIZULLAH EBADY, together with others, owned, controlled and operated, directly and indirectly, more than 50 Scheme Pharmacies across the United States including Scheme Pharmacy #1 located in Brooklyn, New York, and Scheme Pharmacy #2 located in Staten Island, New York, entities the identities of which are known to the Grand Jury, as well as other pharmacies located elsewhere in New York and in New Jersey, Pennsylvania, Texas, Michigan and Alabama.

C.    The Recruitment of Physicians and Use of the Physicians' NPI Codes to Generate Fraudulent Prescriptions

18.    In furtherance of the scheme, the defendants BRIAN SUTTON, BRYCEN KAY MILLETT, ANTHONY SANTAMARIA and JOSHUA MANUEL ALEGRIA, together with others, including David Gary Bishoff and Dela Saidazim, recruited or directed the recruitment of licensed physicians, located in states in which they operated Scheme Pharmacies, in order to use the physicians' NPI numbers to create fraudulent prescriptions and reimbursement requests.

19.    As part of their recruitment efforts, the defendants engaged physicians to review prescriptions purportedly made by mid-level practitioners (e.g., nurse practitioners and physician's assistants) to Beneficiaries after telemedicine visits.   Contrary to what the recruited physicians had been told, in many cases there were no telemedicine visits between mid-level practitioners and the Beneficiaries.

20.    Once the defendants had recruited physicians licensed in the same state as a Scheme Pharmacy, the defendants generated or caused the generation of fraudulent prescriptions for the Beneficiaries of Private Insurers contacted by the call centers and electronically transmitted the prescriptions to the recruited physicians purportedly for review and approval.   The prescriptions were transmitted in groups with only the option to approve or reject the entire group of prescriptions.   The physicians were prevented from modifying the quantity or type of medication prescribed, or from accepting or rejecting only some of the prescriptions.   If the physicians "approved" the group of prescriptions, the defendants then caused reimbursement requests for the fraudulent prescriptions to be submitted to Private Insurers using the reviewing physicians' NPI numbers.

D.     The Submission of Claims to Private Insurers for Fraudulent Prescriptions Purportedly Filled by the Scheme Pharmacies

21.     Through the Scheme Pharmacies and Remote Billing Software, the defendants BRIAN SUTTON and ANTHONY SANTAMARIA, together with others, caused hundreds of thousands of reimbursement requests to be remotely submitted to Private Insurers for the fraudulent prescriptions that were purportedly to be filled by the Scheme Pharmacies. In many cases, the Beneficiaries did not receive the prescriptions that were purportedly filled by the Scheme Pharmacies.

22.     Once Private Insurers reimbursed the Scheme Pharmacies for the fraudulent reimbursement requests, the defendants BRIAN SUTTON, BRYCEN KAY MILLETT, ANTHONY SANTAMARIA, JOSHUA MANUEL ALEGRIA, HERSHEL TSIKMAN and HAFIZULLAH EBADY, together with others, including David Gary Bishoff, then caused the fraudulently obtained proceeds of the scheme to be transferred, directly and indirectly, from within the United States to bank accounts outside of the United States. Once the funds were overseas, SUTTON, TSIKMAN and others divided some of the fraudulent proceeds among the conspirators and used some of the fraudulent proceeds to further promote the scheme by, among other things, purchasing additional Scheme Pharmacies, and funding the operations of existing Scheme Pharmacies and the call centers.

23.     Once the Private Insurers realized that Scheme Pharmacies were seeking and obtaining reimbursement for fraudulent prescriptions, the Private Insurers ended their business relationships with the Scheme Pharmacies, but not before millions of dollars of fraudulently obtained reimbursements had already been paid by the Private Insurers and thereafter transferred offshore and concealed. For example:

9

(a) In or about and between February 2020 and September 2020, the defendants and their co-conspirators caused more than $17 million in reimbursement requests to be submitted through the Remote Billing Software to Private Insurers on behalf of Scheme Pharmacy #1. The Private Insurers, in turn, paid more than $11 million on those reimbursement requests before they discovered the fraud and terminated their relationships with Scheme Pharmacy #1 approximately eight months after Scheme Pharmacy #1 had been purchased by the defendants.

(b) In or about and between December 2020 and May 2021, the defendants and their co-conspirators caused more than $7.9 million in reimbursement requests to be submitted through the Remote Billing Software to Private Insurers on behalf of Scheme Pharmacy #2. The Private Insurers, in turn, paid more than $4.1 million on those reimbursement requests before they discovered the fraud and terminated their relationships with Scheme Pharmacy #2 approximately six months after Scheme Pharmacy #2 had been purchased by the defendants.

24. After the Private Insurers discovered the fraud and ended their relationships with individual Scheme Pharmacies, the defendants BRIAN SUTTON, BRYCEN KAY MILLETT, ANTHONY SANTAMARIA, JOSHUA MANUEL ALEGRIA, HERSHEL TSIKMAN and HAFIZULLAH EBADY, together with others, continued the health care fraud and money laundering scheme at new Scheme Pharmacies.

25. In total, between approximately April 2017 and March 2022, the defendants BRIAN SUTTON, BRYCEN KAY MILLETT, ANTHONY SANTAMARIA, JOSHUA MANUEL ALEGRIA, HERSHEL TSIKMAN and HAFIZULLAH EBADY, and their co-conspirators caused the submission of over $500 million in reimbursement requests to be

submitted to Private Insurers on behalf of over 50 Scheme Pharmacies. The Private Insurers paid over $280 million as a result of those fraudulent submissions.

## COUNT ONE
### (Conspiracy to Commit Health Care Fraud)

26.    The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

27.    In or about and between April 2017 and March 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants BRIAN SUTTON, also known as "Mike Summers," "Mike Miller" and "Ryan White," BRYCEN KAY MILLETT, also known as "Brett Johnson" and "Tommy Wilkinson," ANTHONY SANTAMARIA, also known as "Big Boy," "Wade Watts," "Pablo Rodriguez," "Ryan Rusty" and "Bruce Peter," JOSHUA MANUEL ALEGRIA, also known as "Jboy," "Jaxon Asher" and "Turk Malloy," HERSHEL TSIKMAN, also known as "Andrew Milner," "Andrew M.," "Linus Caldwell," "Adam Schneider," "Jonathan Martin," "H" and "Schmeckel," and HAFIZULLAH EBADY, also known as "Hafiz Ebady," together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud one or more health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit: one or more Private Insurers, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, one or more Private Insurers, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
### (Health Care Fraud)

28.    The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

29.    In or about and between April 2017 and March 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants BRIAN SUTTON, also known as "Mike Summers," "Mike Miller" and "Ryan White," BRYCEN KAY MILLETT, also known as "Brett Johnson" and "Tommy Wilkinson," ANTHONY SANTAMARIA, also known as "Big Boy," "Wade Watts," "Pablo Rodriguez," "Ryan Rusty" and "Bruce Peter," JOSHUA MANUEL ALEGRIA, also known as "Jboy," "Jaxon Asher" and "Turk Malloy," HERSHEL TSIKMAN, also known as "Andrew Milner," "Andrew M.," "Linus Caldwell," "Adam Schneider," "Jonathan Martin," "H" and "Schmeckel," and HAFIZULLAH EBADY, also known as "Hafiz Ebady," together with others, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud one or more health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit: one or more Private Insurers, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, one or more Private Insurers, in connection with the delivery of and payment for health care benefits, items and services.

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## COUNT THREE
### (Money Laundering Conspiracy)

30.    The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

31.    In or about and between April 2017 and March 2022, both dates between approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants BRIAN SUTTON, also known as "Mike Summers," "Mike Miller" and "Ryan White," BRYCEN KAY MILLETT, also known as "Brett Johnson" and "Tommy Wilkinson," ANTHONY SANTAMARIA, also known as "Big Boy," "Wade Watts," "Pablo Rodriguez," "Ryan Rusty" and "Bruce Peter," JOSHUA MANUEL ALEGRIA, also known as "Jboy," "Jaxon Asher" and "Turk Malloy," HERSHEL TSIKMAN, also known as "Andrew Milner," "Andrew M.," "Linus Caldwell," "Adam Schneider," "Jonathan Martin," "H" and "Schmeckel," and HAFIZULLAH EBADY, also known as "Hafiz Ebady," together with others, did knowingly and intentionally conspire:

(a)    to conduct one or more financial transactions affecting interstate and foreign commerce, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: an act and activity constituting an offense involving a Federal health care offense, in violation of Title 18, United States Code, Sections 1347 and 1349 (collectively, the "Specified Unlawful Activity"), knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, (i) with the intent to promote the carrying on of the Specified Unlawful Activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (ii) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the Specified Unlawful Activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b)    to transport, transmit and transfer monetary instruments and funds from one or more places in the United States to and through one or more places outside the

13

United States, (i) with the intent to promote the carrying on of the Specified Unlawful Activity, contrary to Title 18, United States Code, Section 1956(a)(2)(A), and (ii) knowing that such monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity and that such transportation, transmission and transfer were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the Specified Unlawful Activity, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE AND TWO

32. The United States hereby gives notice to the defendants that, upon their conviction of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p)).

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT THREE

34.    The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

35.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

     (a)    cannot be located upon the exercise of due diligence;

     (b)    has been transferred or sold to, or deposited with, a third party;

     (c)    has been placed beyond the jurisdiction of the court;

     (d)    has been substantially diminished in value; or

     (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

15

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code. Section 853(p)).

A TRUE BILL

_____
FOREPERSON

By Carolyn Pokorny, Assistant U.S. Attorney
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2020R00002
FORM DBD-34
JUN. 85

No. 21-CR-564 (S-3) (WFK)

## UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

BRIAN SUTTON, et al.

Defendants.

## SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 982(a)(1), 982(a)(7), 982(b)(1), 1347, 1349, 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, S* _____

_____

*John Vagelatos, Jessica Weigel, Jonathan P. Lax, Assistant U.S. Attorneys*
*(718) 254-6182/6157/6139*